UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE METOPROLOL SUCCINATE PATENT LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MDL DOCKET NO. 1620 ALL CASES |
| _____ | | |
| ASTRAZENECA AB, AKTIEBOLAGET HASSLE and ASTRAZENECA LP, | | |
| Plaintiffs, | | |
| v. | | Case No. 4:03CV592 RWS |
| KV PHARMACEUTICAL COMPANY, | | |
| Defendant. | | |

## MEMORANDUM AND ORDER

Astrazeneca AB, Astrazeneca LP, and Aktiebolaget Hassle ("Hassle") filed this suit against KV Pharmaceutical Company on May 6, 2003. At issue in this case is whether KV has infringed on two patents claimed by Plaintiffs for a particular salt of metoprolol, metoprolol succinate, and for sustained release preparations using it.

On December 17, 2004, Plaintiff Hassle filed a motion to disqualify KV's law firm Kenyon & Kenyon. Hassle claims that Kenyon & Kenyon should be disqualified because an attorney-client relationship existed between the firm and Hassle in a prior patent infringement matter that is substantially related to the present lawsuit. Hassle asserts that Kenyon & Kenyon's representation of KV is in direct conflict with Hassle's interest as a former client.

I will deny Hassle's motion because Kenyon's representation of KV is not in conflict with Kenyon's involvement in the Schein case. Even if a conflict potentially exists, Hassle waived its

right to seek disqualification of Kenyon based on its delay in bringing this motion.

*Background*

In the 1970's Hassle and Ciba-Geigy Corporation entered an agreement that gave Ciba-Geigy the exclusive right to market Hassle's metoprolol tartrate product, Lopressor, in the United States. Lopressor is used for the treatment of cardiovascular diseases. Ciba-Geigy received a U.S. patent for the drug on August 7, 1978.

In December 1986, Hassle and Ciba-Geigy became aware that Henry Schein, Inc. had submitted an Abbreviated New Drug Application to the FDA seeking approval to market generic metoprolol tartrate. On January 6, 1987, Hassle and Ciba-Geigy entered a supplemental agreement in anticipation of bringing an infringement action against Schein.

On January 22, 1987, Hassle and Ciba-Geigy filed a complaint for patent infringement of metoprolol tartrate products against Schein. Hassle was represented by the firm of Brumbaugh, Graves, Donohue & Raymond. Ciba-Geigy was represented by Kenyon & Kenyon. The litigation was resolved by the entry of a final judgment and consent decree on May 17, 1989. Hassle alleges that it gave Ciba-Geigy "complete control" over the litigation and that Kenyon was lead counsel and "in charge."

Fourteen years later, on May 6, 2003, Hassle and the other two Plaintiffs filed this lawsuit against KV for patent infringement of two patents encompassing the drug metoprolol succinate and its sustained release preparations. KV filed its answer on May 28, 2003 and attorneys from Kenyon were granted pro hac vice standing on June 9, 2003. During the same approximate time period, Plaintiffs filed the same type of infringement action concerning metoprolol succinate in other federal courts against Andrx Pharmaceuticals, LLC, Andrx Corporation, and Eon Labs Inc. On August 11, 2004, these cases were consolidated in this Court by the Panel on Multidistrict

Litigation for contemporaneous pretrial proceedings.

On October 29, 2003, counsel for Hassle, Lisa Pensabene, sent a letter to counsel at Kenyon, Charles Weiss, raising the question of whether Kenyon's representation of KV created a conflict of interest because of Kenyon's former representation of Ciba-Geigy in the Schein litigation fourteen years earlier. Kenyon's Weiss responded by letter on October 31, 2003, that the firm had "little or no institutional memory of that case" and that the partners who were involved in the case were "long gone " from the firm. In addition, Weiss stated that Kenyon did not represent Hassle in that matter, its client was Ciba-Geigy, and that the Schein litigation involved different patents and different products. Finally, Weiss stated that because Hassle's "allegation of an ethical or conflict issue [was] by its nature serious," he demanded that if "you have a meaningful factual basis to allege that a conflict exists, please provide it to us without further delay."

Several more letters passed between Pensabene and Weiss. In a letter dated January 8, 2004, Pensabene asserts that Hassle provided unspecified confidential information to Kenyon during the Schein lawsuit. On February 17, 2004, Weiss responded that Pensabene's letters merely had raised vague allegations of conflict and that Kenyon's position was that its representation of KV did not conflict with Hassle's interests. There is no evidence in the record that Hassle pursued this inquiry any further.

On December 2, 2004, Defendants KV, Andrx, and Eon filed a motion to compel Hassle and the other Plaintiffs to produce "documents concerning domestic and foreign prosecution, opposition, nullity, infringement and other proceedings of [the] patents and application for patents that identify metoprolol in a claim."

On December 3, 2004, Hassle's counsel, Pensabene, sent a letter to Richard DeLucia at Kenyon demanding that Kenyon withdraw from the case base on a conflict with Hassle as a former

client. Pensabene states that the motion to compel filed by KV on December 2, 2004 would encompass documents from the Schein litigation and that KV appears to be contending that information about any form of metoprolol, including metoprolol tartrate (Lopressor) was relevant to the present case.

On December 17, 2004, Hassle filed the present motion seeking to disqualify Kenyon from the case because of "an attorney-client relationship between the firm and Hassle in the [Schein case] that, by KV's own admission, is substantially related to the present action." The motion was fully briefed on April 5, 2005.

At a hearing on January 6, 2005, KV and the other Defendants withdrew their motion to compel litigation documents concerning metoprolol which included the documents from the Schein case.

*Analysis*

Disqualification of counsel is within the sound discretion of a district court. Midwest Motor Sports v. Arctic Sales, Inc., 347 F.3d 693, 700 (8th Cir. 2003). Motions to disqualify counsel are generally disfavored. Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc., 142 F. Supp. 2d 579, 581 (D. Del. 2001)(citing Cohen v. Oasin, 844 F. Supp. 1065, 1067 (E.D. Pa.1994). The party seeking disqualification must clearly show that continued representation would be impermissible. Id. (quotations omitted). Vague and unsupported allegations are not sufficient to meet this standard. Id. (quotations omitted).

Whether disqualification is warranted involves a two-step inquiry. A court should first determine whether counsel violated a rule of professional conduct. If such a finding is made, a court must then determine whether disqualification is an appropriate sanction for the violation. Id.

The first inquiry is whether a violation of professional conduct is present. Hassle asserts that Kenyon's representation of KV violates Rule 4-1.9 of the Rules of Professional Conduct of the Supreme Court of Missouri based on Kenyon's alleged former representation of Hassle.

Rule 4-1.9 state that a lawyer who has formerly represented a client in a matter shall not thereafter:

> (a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

Mo. Sup. Ct. R. 4-1.9(a). In addition, Rule 1.10 states that when a lawyer leaves a firm, the firm is not precluded from representing a person with interests materially adverse to those of the client of the former lawyer unless: the matter is the same or substantially related to the former representation *and* any lawyer remaining at the firm has privileged information that is material to the matter. Mo. Sup. Ct. R. 4-1.10(c).

Hassle contends that it was a former client of Kenyon in the Schein case. The facts, however, clearly demonstrate that Kenyon represented Ciba-Geigy in that matter and that Hassle retained its own counsel who represented Hassle throughout that case. Alternatively, Hassle asserts that it had an implied attorney-client relationship with Kenyon in the Schein case because Kenyon was lead counsel in that matter and was privy to confidential information from Hassle.

This position is belied by the undisputed fact that a legal battle ensued between Hassle and Ciba-Geigy in the early 1990s not long after the resolution of the Schein case. Although the two companies had agreed to a licensing arrangement regarding metoprolol tartrate, the companies were competitors and adverse to each other on other salts of metoprolol. In the early 1990s Kenyon represented Ciba-Geigy adversely to Hassle before

the PTO and the FDA on one of the very patents that was asserted in the Schein case when Hassle attempted to block Ciba-Geigy's marketing of sustained release metoprolol fumarate. Had Hassle, a large and sophisticated company, perceived Kenyon as its counsel in the Schein case, it would have certainly complained about Kenyon's representation of Ciba-Geigy before the PTO and FDA. Hassle's silence on such a direct conflict of interest, much closer in time than the present dispute, speaks volumes about its perception of Kenyon's role in the Schein case. I conclude that Kenyon did not have an attorney-client relationship with Hassle in the Schein case.

Nor is the "substantially related" prong of Rule 4-1.9 met in this matter. The Schein litigation concerned a different composition of metoprolol than in the present case whose patents expired more than ten years ago. The mere fact that Defendants sought to compel discovery of information about Plaintiffs' metoprolol prosecutions and litigation does not make the issue substantially related to the Schein case. Discovery is a broad brush stroke that does not need to be substantially related to a case, it need only be calculated to lead to relevant information. Defendants dropped their motion to compel discovery of litigation documents to assuage any concerns Hassle had about the Schein case even though KV properly asserted that a client conflict did not exist.

In addition, Kenyon's assertion that its partners involved in the Schein case have long since retired from the firm has not been challenged. Although an attorney (Steven Lee) who worked on the Schein case remains at the firm, he was first-year associate at the time and his involvement with the case was minimal. He did not obtain, nor does he have any material confidential information from Hassle from the Schein litigation. Although Hassle has made allegations that it provided confidential information to Kenyon during the

Schein case, it has failed to provide *credible* proof of *what actually was* provided to Kenyon and how it is material to the present lawsuit. Such unsupported allegations do not support a basis for the disqualification of Kenyon. As a result, there is no basis for imputed disqualification under Mo. Sup. Ct. R. 4-1.10.

Finally, even if I were to find a suggestion of conflict, which I do not, I would not grant Hassle's motion to disqualify Kenyon because of Hassle's delay in bringing this motion. A motion to disqualify should be made promptly after a party discovers facts that lead to such a motion. Central Milk Producers Cooperative v. Sentry Food Stores, Inc., 573 F.2d 988, 922 (8th Cir. 1978). A litigant may not delay filing such a motion in order to use the motion as a tool to deprive an opponent of his counsel after substantial preparation of a case has been completed. Id. The right to move to disqualify may be waived by an unreasonable delay in filing the motion. Id.

In the present case, Hassle's counsel sent a letter to Kenyon on October 29, 2003, raising a concern about Kenyon's participation in the Schein litigation and a possible conflict of interest in Kenyon's representation of KV. The parties exchanged letters over the issue and Hassle did not pursue the matter. At the time of this exchange, Hassle was aware of the alleged conflict and had the ability to look to its own records to determine if a conflict actually existed. For whatever reason, Hassle did not follow through on its concern.

Over thirteen months later, after the parties have substantially prepared their case, Hassle filed its motion to disqualify Kenyon on December 17, 2004. Hassle attempts to explain this delay by suggesting that the scope of the lawsuit changed when Defendants sought to compel litigation documents concerning metoprolol. This request did not

change the fundamental fact of whether Kenyon had ***material confidential*** information about Hassle on October 29, 2003, when Hassle first raised the conflict concern with Kenyon.

It was Hassle's obligation to follow-up its accusations of a client conflict in a timely manner. Hassle failed to do so until the parties had completed substantial discovery and Defendants were preparing a motion for summary judgement that was filed on December 30, 2004. Such a delay was unreasonable and constitutes a waiver of Hassle's right to bring its motion to disqualify Kenyon. See Geissal v. Moore Medical Corp., 92 F. Supp. 2d 945 (E.D. Mo. 2000) and Cox. v. American Cast Iron Pipe Company, 847 F.2d 725 (11th Cir. 1988).

Accordingly,

**IT IS HEREBY ORDERED that** Plaintiffs' motion to disqualify the law firm of Kenyon & Kenyon as counsel for Defendant KV Pharmaceutical Company [#104] is **DENIED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 8th day of July, 2005.